The next matter on our case is Portelos v. Hill. Nicely briefed, too, I might add. Did you hear that, Mr. Cole? I announced it too late. I thought it was nicely briefed, too. So, get your associates to lunch. You may proceed, Counsel. Good morning. Brian Glass for Plaintiff Appellant Francesco Portelos. Mr. Portelos is a classic whistleblower. But for him reporting his principal's fraud of double-dipping, $53,000 worth of double-dipping, his principal never would have been convicted of essentially she had to pay an $801 fine for basically double-dipping and committing a fraud on the city. This is a classic whistleblower situation. Now, we were very happy to get to trial in this case. I know very few of these cases get to trial. And this is one of the rare cases that made it to trial because Mr. Portelos reported to the Special Commissioner of Investigation and it had to be conceded that that was considered an outside entity that would deserve First Amendment protection. The problem is when we got to trial, the district judge who was new to the case, who was assigned to the case just before the trial, sort of hurt our timeline or severely impacted our timeline significantly. There were three ways she did that which essentially prevented us from getting in front of the jury the true story of what actually happened with Mr. Portelos and the retaliation timeline. Just limiting the time he could testify or how else did she do that? No, it wasn't so much the time. There was a time restriction on how much time she gave us to testify. But what was more damaging to us was her rulings initially on summary judgment just before trial, which she did sort of on the eve of trial on the SLT speech. The question is whether the summary judgment ruling is even before us based on the notice of appeal. We did make reference to that in our papers on page 3-5 and we believe it could be implemented liberally given that this was briefed by the parties. It was an interlocutory decision. Jurisdictional, it can't be waived. We can't find jurisdiction if there was no jurisdiction. The only thing that the notice of appeal alleged was the trial and the verdict and the order. It doesn't mention the summary judgment at all. Well, we did cite some cases from the Second Circuit which says it can be inferred that this was part of the argument that the court could assert jurisdiction. We've cited some cases in our brief on that point. But even if we got beyond the SLT speech, which we do believe it's similar to the Matthews case, which we believe Judge Hall was on, I think if you look at the Matthews case, you'll see analogous circumstances here of someone talking about speech as a matter of public concern and a volunteer activity. And again, if the court wanted to hear further on that, we can discuss that. But there was also two other severely impacting restrictions on what we could put before the jury. That second aspect had to do with union speech, which was clearly part of the trial. On the union speech issue, we had presented evidence that on January 27th, before the retaliation occurred, Mr. Portellos was subject to discipline for emailing the entire union staff about concerns between— the active chapter leader at the school was not doing his justice to the membership. Judge Hall initially allowed that to be added— Darcy Hall added that to the case, and then the next day she changed her mind and said that would not be protected speech, and she wouldn't let the jury consider that. Now, had that been considered, we believe we would get a directed verdict on that issue because there was no dispute that he was directly disciplined for emailing the entire staff. Now, this union speech has been considered by this circuit, and it's been considered by lower courts in this circuit. Pekowski was the case that I had presented to Judge Darcy Hall, and there have been subsequent cases about this. But the issue is he became the chapter leader of the school. As the chapter leader of the school, and he's talking about the membership and the concern of the membership that Candia wasn't doing justice to the membership, he is engaged in classic First Amendment activity. And Judge McCarthy and Payson just decided a case on this, Pekowski. And so if that speech was before the jury, there's no dispute that he was— Is it a matter of public concern? Well, I think the courts are recognizing that union speech can be a matter of public concern if it's not strictly of his own personal interest, but if he's speaking out for the membership. Now, Richard Candia should have reported the time card fraud. He had Mr. Portellus did it. Mr. Portellus put his neck out and reported the time card fraud and suffered 37 disciplinary charges as a result, most of which were ultimately dismissed. The chapter leader should have been doing that at the school, and he actually fed the information to Mr. Portellus to do it because he didn't want to put his neck out. Now, he's talking about the goodness of the school. This is First Amendment activity. If you read cases like Pekowski, you read the pace and decision. There are cases now the Second Circuit is recognizing that he is the chapter leader. He became the chapter leader. At the time, he was a delegate. He has chapter leader, not about his own personal concerns. It was beyond his personal concerns. In fact, it's conceded that the judge was weighing this. She said, well, some of it had to do with his public concern, some of it didn't, and the majority, I decide on my own, that it's not enough public concern. But she herself conceded that some of it infringed on that public concern aspect. She just kind of did a weighing balance without any real standard to be applied. The standard by which we judge a judge's decision in evidentiary rulings is very differential, as you know. Was it an abuse of discretion? I think on a First Amendment claim, because the courts have been reviewing so many of these cases, remember Matthews was reversed by this circuit, I think it's almost a de novo review because the court doesn't really have to weigh the evidence so much. This is a classic legal issue that the court can look at, and there have been many cases that the circuit has reversed lower court judges. Are you arguing that an evidentiary ruling was wrong? Excuse me? Are you arguing that an evidentiary ruling made by Judge Darcy Hall was wrong? No, it's not an evidentiary ruling. It's strictly a legal question because we presented the evidence. The evidence came before the jury, came before Judge Hall, came before the jury. We're not saying she ruled wrongly on the evidence. We're saying she just misinterpreted the speech itself. The letter is fairly squarely in front of you. No one's disputing it. The question is whether that is classic. Wait, she didn't allow it to go to the jury. Isn't that an evidentiary ruling? Well, she ruled it out of the case initially by saying it wasn't protected. So that's a legal ruling. I don't want to have a semantics dispute. You wanted to offer this to the jury, and she didn't allow it. And we judge that act of hers by a very differential standard. Well, I believe it's different just because the question has to first be decided if this is First Amendment protected speech. I don't think the judge would have any problem putting that before the jury if she ultimately concluded that was protected speech. She made a mistake in law by concluding that it wasn't First Amendment protected speech. That's her argument, yes. And then the third argument is the anonymous speech. Again, we have evidence in the record suggesting that the principal was well aware as early as February 14th, in fact earlier, January 30th, that he was the one reporting her for the time card fraud. Now, at trial, she only let us say to the jury that April 23rd was the first time it was revealed. Mr. Portell has testified on direct that Principal Hill admitted she knew February 14th that he was investigating time card fraud, and it was reported. That completely changed the timeline for us as far as what the jury heard. And it's interesting that the jury itself, during deliberations, came back with one question. Their question was, when did he report the time card fraud? If it had been January 30th or February 14th, where we believe there was evidence in the record to show that, I think we would have easily, liability would have been found. But by restricting us to April 23rd, we were sort of out of the box, and this didn't look like a retaliation case at all. So what we're asking for is to reinstate this, or if you find that the union's speech is protected, we can get a directed verdict on that ground alone. And again, we believe that if the speech got in properly, this would be a much different result. Thank you. You have reserved two minutes for rebuttal. Good morning. Good morning. Scott Shore for the Appellees. This court should affirm the order denying plaintiffs' motion for a new trial, and to the extent there's jurisdiction, it should also affirm the order granting the city's motion for partial summary judgment. Judge Pooler, with respect to your question on jurisdiction, there were two notices of appeal here. The first one said that plaintiffs wanted to appeal from the jury verdict, but then provided the date of the judgment. And arguably, if that had been the only notice of appeal ever filed, one could infer that that meant they wanted to appeal from all antecedent rulings. But that was not the final notice of appeal. There was a modification to that notice of appeal, which said what we want to appeal from is the jury verdict, didn't mention the date of the judgment anymore, and we also want to appeal from the denial of our post-trial motion. So that looks as though they knew what they were doing when they decided to designate only those two things, the verdict and the post-trial order. And that is all that is available for review right now. The decision on denying the- Does the second supersede the first, or do we read it in combination? The second supersedes, but this court has said in other cases that it's permissible to look at withdrawn notices of appeal to discern intent. And our point here is that if you decide to do that, all it shows is that they deliberately decided to limit their appeal. And the post-trial order denying the motion for a new trial didn't reach the summary judgment issues because plaintiffs sought review of the summary judgment order too late. They had 14 days under Eastern District Local Rule 6.3, and they didn't do it in a timely fashion. But even assuming this court has jurisdiction over the summary judgment order, the summary judgment was, of course, correct, as you'd expect me to say. But here's why. The court ruled on the SLT speech, the school leadership team speech, and that speech was engaged in in Mr. Protelis's capacity as a teacher. He was appointed- He was a teacher member of the committee? He was a teacher member of the committee, Your Honor. He wasn't even eligible to serve as a parent member of that committee. And- That was part of his job. Was he paid to be at that? He was compensated, Your Honor, and it was in his capacity as an SLT member, the teacher-appointed member, that he asked the question of Principal Hill, what's going on with the comprehensive education plan, the CEP? And he got his answer, and he took that to mean that she had ignored the SLT. Now, it's the SLT's responsibility to work on the CEP, so he performed his duty as a teacher member of the SLT by emailing other members of the SLT to let them know what he thought and that something ought to be done about it. This was part and parcel of his responsibilities as a teacher member of the SLT, and therefore it's not protected under the First Amendment. Talk about the evidentiary rulings that counsel claims they were aggrieved by. Yes. I want to talk about the union speech, but first, before I forget, there was this other list of what I'm calling miscellaneous speech that my adversary hasn't mentioned yet, but I wanted to note that on page A981 of the record, page 59 of the transcript of the post-trial oral argument, all arguments regarding that miscellaneous speech were waived. He said, I'm not challenging your ruling on that. So that's really out, no basis for appeal. The union speech, I haven't heard my adversary cite any particular statement of Mr. Portelos when he was speaking to union members or in his subsequent email to union members that addressed a matter of public concern as opposed to his own individual situation. One thing he said during that meeting, et tu, Brutus, and that just suggests that people have been stabbing him in the back. He made other references to people getting stabbed in the back. He certainly felt that he was being stabbed in the back. He mentioned staff members forwarding his Facebook post to the administration to cause issues. Well, it was causing issues for him, and he complained that Principal Hill had admonished him. That's all his personal situation. Similarly, in the follow-up email, he said he wanted to keep his commitment to staff, that Candia had sidelined him even though he was a union delegate, that he had some ideas. He hoped, for the sake of the community, this can be worked out. None of that is a matter of public interest. It's his own situation. And the district court didn't waffle, to use my adversary's term. The district court said, sure, in general, union speech can be protected, but it's not here because your union speech addressed only your own situation. And I wanted to mention an argument made in the reply brief citing this PERB decision, which is outside the record and came down after the trial in this case and had nothing to do with the First Amendment. The PERB decision was about whether the school had interfered with plaintiff's exercise of his protected union rights. And even the portion of the PERB decision the plaintiff relies on, which is pages 26 to 27, isn't about Hill or Claudio. It's about Aguirre and whether she disciplined him for engaging in protected union activity. So no connection between that decision and this case. With respect to the pseudonymous e-mails, the district court correctly ruled that there should be no evidence offered regarding the question of whether Principal Hill knew that he was responsible for the pseudonymous e-mails before mid-April of 2012. The district court made that ruling based on collateral estoppel. During the Section 3020A hearing, the arbitrator had already determined that Principal Hill did not know about this. Was that appealed, the 3020A ruling? Was it appealed? I don't believe it was, Your Honor. But I will note that when the city moved for summary judgment, it asked for collateral estoppel. It asked for collateral estoppel effect to be given. And my adversary did not oppose that. He didn't oppose that with respect to this ruling in footnote 17. But he did go on and say that the court should give collateral estoppel effect to other portions of the 3020A decision. But it's not dispositive, the 3020A ruling, in any event. The district court could have made a decision based on what she knew about when the principal became aware of this. And I would like to get to that because the statement my adversary just made that she knew in January is unsupported by the record. My adversary says, well, if you look at the text messages she received in January, she admitted that when she looked at those text messages, she knew that Portellos was behind the pseudonymous speech. There's no support for that. He cited her statement from the PERB hearing where she says the opposite. I was shown text messages. It was an exchange between Candia and Portellos. The Portellos messages were edited out, so all I could see was Candia. And I stopped reading because I didn't want to see just Candia's side of the conversation. And I saw nothing in there that would have – and she said, I do not recall whether anything I saw there told me that Portellos was behind the pseudonymous speech. According to opposing counsel, the jury was confused about this timeline, wasn't it? I don't – What was the question they asked? There was a question. What they wanted to know was they wanted to review Portellos' direct testimony about when he reported Principal Hill's misappropriation of funds. And I don't know where they're getting $55,000. There's no record support for that that I've seen. In response, the jury has read transcript page 382, line 17, to 383, line 8, where Plaintiff says that on March 24th, when he had already submitted to investigation into the principal's timecards without hearing anything, he made a FOIA request to the DOE asking for his timecards. That's it. And when Portellos testified that on February 14th, Principal Hill started out meeting by saying, I know you've been looking into my timecards, he didn't say that she said that she knew that he had reported it, just that she knew he was looking into the timecards. What was that date? That was the February date? That was February 14th. I mean, it wouldn't be safe to assume that it's also possible that she could have concluded that the e-mails under the pseudonym were generated by him since he was looking into it? It's not clear to me that she even knew about any investigation that had been prompted by the pseudonymous complaints at that point. So the only evidence we have is that she knew as of that date that he was looking into his timecards. Then later she testified that on March 24th, after he had reported his concerns to the OSI, she made a note in her log that he had done so. So that is why the district court properly precluded any evidence that would have contravened the 3020A finding that Principal Hill didn't know before mid-April that he was responsible for the pseudonymous e-mails. And I would like to note that although plaintiff says retaliation was not at issue in the 3020A, that's just false. On page 41 of the 3020A decision, the arbitrator says in the first paragraph or two of the discussion that plaintiff wants all of the charges with respect to 2011 to 2012 dismissed on the grounds that they're retaliatory. So that was front and center, and he never complained that he lacked a full and fair opportunity to engage in discovery in the 3020A if there's anything else that he wanted the arbitrator to consider. It's interesting to note that the plaintiffs do not make any sort of weight of the evidence argument, nor would it be wise for them to do so. There is evidence that Mr. Portellos was disruptive, insubordinate, and vengeful, and the jury properly determined that there was no retaliation for First Amendment speech that drove any decision. Thank you, counsel. Mr. Glass, you've retained two minutes for rebuttal. Yes. I want to particularly mention this point that both yourself and Judge Wesley pointed out. On page 37 to 38 of their brief, the city is trying to claim that he had these extensive discovery procedures in 3020A, which is not true. The reason we found out that Hill knew about the time card fraud earlier is because there was an SCI investigation where she admitted to the SCI investigator that she knew earlier in January or February. Why wasn't that in the record? We did try to present it in the record, but she was relying on this collateral estoppel idea that the arbitrator had thrown something in during the 3020A decision, which had been decided well before. Why wasn't it brought before the 3020A hearing? Because it was irrelevant to 3020A. First of all, we didn't have that information because his 3020A was heard before this federal case was heard years later. So at that time, we didn't even have the SCI report. We also found out at PERB subsequent to his 3020A decision that, again, she admitted that she knew. And then there is actually evidence in the record. On February 14, Mr. Portels testified at trial, yes, she told me on February 14 she knew about the time card fraud. So the city is playing this game here. On page 38, they say that portion did not answer the jury's inquiry because it did not concern when he reported his suspicions. But as Judge Wesley properly picked up, if she knows on February 14 about the time card fraud, you can put two to two together. Even if he was anonymous initially, everyone knows she knew that he had reported fraud earlier, as early as February 14, earlier. And she was perfectly well aware of that. Now, of course, at trial, she's going to testify she doesn't know. She's already committed fraud. She doesn't want to see it out in front of the jury. But there's really no dispute, and the judge would not let this be heard by the jury. The jury asked specifically, when did he find out? When did she know? She knew February 14. She knew January 30. There was more than ample evidence to put that in front of the record, and she wouldn't allow it. If that's in front of the jury, we get a different verdict. As far as some of the other points, we did raise in our post-summary judgment motion, post-trial motion, the issue of the SLT speech. I believe that was squarely in front of the judge. She relied on this idea that we had to do it within 14 days. I understood it was interlocutory at the time. Again, if you're going to reach the SLT question, it's clear that the parents get compensated as well. He's not talking about his teacher duties. Look at the Matthews case again. This is a broader public purpose. This is not part of his job duties. He's a teacher. He's not talking about budgetary fraud. He's not talking about double-dipping and time cards. That's not what a teacher does. That's not what Matthews does when he reports fraud in the system. He was paid. Craig Matthews was paid. Francesco was paid basically nothing for this, and he's talking about something well beyond teacher duties. This is not teacher duties. This is public speech, and it's a public concern, and any citizen could report that. If a parent made the same allegation, would that be protected under the First Amendment? I submit it would, and that parent was also compensated to be on the same committee. Thank you. Thanks very much. Thank you both. Very lively argument. We will reserve decision.